**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND**

**CIVIL ACTION NO. 12-88-DLB**

**HELEN RIZZO**                                                       **PLAINTIFF**

**vs.**                            **MEMORANDUM OPINION & ORDER**

**CAROLYN W. COLVIN, Commissioner
SOCIAL SECURITY ADMINISTRATION**                    **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Helen L. Rizzo filed an application for supplemental security income on September 4, 2009, alleging disability as of January 1, 2004. (Tr. 127-133). She claims disability due to fibromyalgia, depression, and psychotic tendencies. (Tr. 146-147). Her application was denied initially and upon reconsideration. (Tr. 74-77, 80-82). At Plaintiff's request, an administrative hearing was conducted on December 1, 2010, by Administrative Law Judge Roger L. Reynolds. (Tr. 35-71). On January 24, 2011, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to supplemental security income. (Tr. 19-29). This decision became the final decision of the Commissioner when the Appeals Council denied review on July 14, 2012. (Tr. 1-6).

On September 14, 2012, Plaintiff filed the instant action. The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 14, 15).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Cutlip*, 25 F.3d at 286. Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). However, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal

a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. The ALJ's Determination

At Step 1, the ALJ found that there was no evidence that Plaintiff had engaged in substantial gainful activity since the alleged onset of his disability. (Tr. 24). At Step 2, the ALJ found Plaintiff has the following severe impairments within the meaning of the regulations: drug and alcohol dependency, allegedly in short term remission; major depressive disorder, rule out substance induced mood disorder, with psychotic features; and anxiety disorder, not otherwise specified. (*Id.*).

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*). In doing so, the ALJ found that Plaintiff's mental impairments do not meet or equal the requirements of Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), or 12.09 (substance addiction disorders) because they do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration.

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, lifting and carrying up to one hundred pounds occasionally, fifty pounds frequently, with sitting, and standing and walking up to

3

six hours each in an eight hour day. (Tr. 26). However, ALJ did set forth the following additional non-exertional limitations:

> The claimant requires entry-level work with simple repetitive procedures, no requirement for detailed or complex problem solving, independent planning or the setting of goals. She should not be working at jobs involving frequent changes in work routines. She should work in an object-oriented environment with only occasional and causal interaction with co-workers, supervisors or the public.

(*Id.*). Based upon this RFC, the ALJ concluded at Step 4 that Plaintiff was unable to perform any past relevant work. (Tr. 28).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 28-29). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, and RFC. (Tr. 28). The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could work as a production labor/hand packer at the medium level (14,000 jobs in Kentucky/944,000 nationally), or as a janitor/clear at the medium level (19,000 jobs in Kentucky/1,569,000 nationally). (Tr. 28-29). Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that she was not under a "disability," as defined by the Social Security Act. (Tr. 29).

### C. Analysis

Plaintiff advances four arguments on appeal. First, Plaintiff argues that the ALJ erroneously substituted his medical judgment for that medical professionals by imposing

4

his own qualification of Plaintiff's diagnosed depression as "rule out substance induced mood disorder," which was not diagnosed anywhere in the record. Second, Plaintiff contends that the ALJ erred in concluding that her diagnosed fibromyalgia and untreated plantars warts were not severe impairments yielding functional limitations. Third, Plaintiff argues that the ALJ erred in concluding that Plaintiff could perform work at the medium and higher level of exertion. Fourth, Plaintiff contends that the ALJ erred in assessing Plaintiff's mental RFC and thus tainted the VE's testimony. Each of these arguments will be addressed in turn.

### 1. The ALJ's invocation of the phrase "rule out substance induced mood disorder" does not justify disturbing the ALJ's decision

Plaintiff takes issue with the following portion from the ALJ's decision:

> The claimant has the following severe impairments: drug and alcohol dependency, allegedly in short term remission; *major depressive disorder, rule out substance induced mood disorder, with psychotic features*; and anxiety disorder NOS (20 CFR 416.920(c)).

(emphasis added). According to Plaintiff, this passage shows that the ALJ reinterpreted Dr. Maria Albosta's diagnosis–"Major depression, recurrent, severe, with psychosis versus substance-induced psychosis"–to render Plaintiff's history of depression as a substance induced mood disorder. (Tr. 711-712). Plaintiff asserts that this case must be remanded for the ALJ to obtain the testimony of a medical advisor and/or consultative psychological evaluation regarding the interrelationship between her history of substance abuse and her independently diagnosed depression and anxiety.

The Commissioner responds that Connie Richardson, a licensed clinical social worker, made several diagnoses, including "opioid dependence, rule out substance induced mood disorder." The Commissioner then asserts that the record of Plaintiff's mental health

5

treatment was extensive, did not indicate that Plaintiff had substance induced depressive disorder, and was consistent with the ALJ's finding of "rule out substance induced depressive disorder." Alternatively, the Commissioner argues that any error in the ALJ's finding is harmless because the medical evidence would not support a finding that Plaintiff had a substance induced mood disorder.

At the outset, the Court notes that the parties seem to be speaking past one another, presumably because the phrase "rule out substance induced mood disorder" is confusing. In the medical context, this phrase simply means a diagnosis which is possible, but not yet established. *Law v. Barnhart*, 439 F. Supp. 2d 296, 307 n.3 (S.D.N.Y. 2006). The decision of the Northern District of New York in *O'Connell v. Astrue*, No. 1:06-CV-1113 LEK/VEB, 2009 WL 606155 (N.D.N.Y. Mar. 9, 2009) is further instructive.

In *O'Connell*, the ALJ found that "[t]he claimant has substance induced mood disorder with only mild depression when sober," but concluded that "he cannot be found disabled or receive benefits because his alcoholism is primary and material to the issue of disability within the meaning of PL 104-121," even though his impairments may have met Listing 12.04 (affective disorders). *Id.* at *20. Notably, he attributed this determination to the claimant's "treating sources" at the Veteran's Administration. *Id.* at *25.

On review, the Northern District of New York remanded the case back to the ALJ because he had substituted the treating physician's opinions with his own diagnosis of "substance induced mood disorder." *Id.* at *26. As the court explained:

> Plaintiff's treating psychiatrists never definitively diagnosed Plaintiff with substance induced mood disorder. Dr. Marra ultimately eliminated substance induced mood disorder as a diagnosis and Drs. Simor and Goodman were only considering it as a possible diagnosis. The ALJ seems to misunderstand the meaning of "rule out" in medical parlance. The ALJ wrote,

6

>apparently referring to Dr. Goodman and Dr. Simor's notes, "[i]t is reported that a diagnosis of rule out substance-induced mood disorder was indicated." The ALJ then found that Plaintiff "suffers from substance induced mood disorder, but is only mildly depressed." However, in the medical context, "rule out" means a diagnosis is only possible, but not established.
>
>Although the ALJ purported to give Plaintiff's "treating sources at the VA" controlling weight, he ignored Dr. Marra's definitive diagnoses of depressive disorder not otherwise specified, polysubstance dependence in remission, and personality disorder not otherwise specified. He ignored Dr. Simor and Dr. Goodman's definitive diagnoses of depressive disorder not otherwise specified, alcohol dependence, polysubstance dependence in remission. He mischaracterizes Nurse Miller's opinion as that of a treating physician. And, he ignored Dr. Simor and Dr. Goodman's notation that they needed to "rule out" substance induced mood disorder and organic mood disorder, indicating they had not yet determined whether those diagnoses applied to Plaintiff. Certainly the ALJ may not make such medical determinations in place of Plaintiff's treating psychiatrists.

*Id.* at \*25 (citations omitted).

Unlike *O'Connell*, the ALJ in this case did not indicate that Plaintiff has a substance induced mood disorder, but instead that Plaintiff has "major depressive disorder, rule out substance induced mood disorder, with psychotic features." This is a notable distinction, as there are several decisions from the Eastern District of Kentucky in which the phrase "rule out substance induced mood disorder" was deemed to be a severe impairment. *See Bray v. Astrue*, No. CIV.A. 11-96-DLB, 2012 WL 71015 (E.D. Ky. Jan. 10, 2012) (deeming "rule out substance-induced mood disorder" to be a severe impairment); *Rice v. Astrue*, No. CIV.A 09-83-HRW, 2010 WL 538871 (E.D. Ky. Feb. 12, 2010) (deeming "bipolar disorder, rule out substance induced mood disorder" to be a severe impairment); *Woods v. Astrue*, No. CIV.A. 08-348-GWU, 2009 WL 2134358 (E.D. Ky. July 15, 2009) (deeming "major depressive disorder, 'rule out' substance-induced mood disorder" to be a severe impairment); *Moore v. Astrue*, No. CIV.A. 07-115-GWU, 2008 WL 4400685 (E.D. Ky. Sept.

23, 2008) (deeming "anxiety, rule out substance-induced mood disorder" to be a severe impairment).

More importantly, the ALJ did not conclude that Plaintiff could not receive benefits due to her substance abuse, but rather that this impairment did not meet or equal the requirements of Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), or 12.09 (substance addiction disorders). Even if the ALJ overstepped his bounds in invoking the phrase "rule out substance induced mood disorder," this purported mistake did not prejudice Plaintiff on the merits or deprive her of a substantial right because the ALJ deemed her major depressive disorder to be a severe impairment and considered whether that impairment, individually and in combination with her other impairments, was listed in or medically equal to an impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. As a result, Plaintiff's justification for a remand–to obtain the testimony of a medical advisor and/or consultative psychological evaluation regarding the interrelationship between her history of substance abuse and her independently diagnosed depression and anxiety–is unpersuasive.

### 2. The ALJ did not err in concluding that Plaintiff's fibromyalgia and plantars warts were not severe impairments

Plaintiff also disputes the ALJ's conclusion that Plaintiff's multiple myalgias and history of plantar warts are less than severe. In his decision, the ALJ noted that the medical evidence shows that Plaintiff complained of diffuse myalgia following a recent cessation of abusing opiate medications, but that Plaintiff reported that Lyrica "helped tremendously" and that the record shows no functional limitations associated with fybromyalgia when Plaintiff was compliant with the prescription. (Tr. 25, 446-452, 479).

8

In disputing his conclusion, Plaintiff argues that the ALJ did not discuss and resolve conflicting evidence, and thus improperly discounted Plaintiff's credibility regarding her pain. Specifically, Plaintiff complains that the ALJ did not acknowledge Dr. Sarah Porter's January 22, 2008 office note, which indicated that samples of Lyrica only halved her pain level, and that the ALJ ignored the doctor's observation on April 2, 2009 that Plaintiff was "tender in the left anterior cervical, right anterior cervical, left gluteal, right gluteal, left greater trochanter, right greater trochanter, left lateral epicondyle, right lateral epicondyle, left posterior knee, right posterior knee, left supraspinatus, right supraspinatus, left trapezius, and right trapezius tender points." (Tr. 645-646, 446-448).

However, that "the fact that the ALJ's opinion failed to discuss all of the testimony and evidence presented to him does not mean that the ALJ 'failed to consider' the evidence." *Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) (citing *N.L.R.B. v. Beverly Enterprises-Massachusetts, Inc.*, 174 F.3d 13, 26 (1st Cir. 1999)). As the Sixth Circuit has explained:

> An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Id.* (internal citations and quotations omitted).

While the ALJ here did not address every single piece of evidence in the record, he did sufficiently consider the evidence of record as a whole. As the Commissioner points out, the office note concerning the effectiveness of the samples of Lyrica was recorded over one year before Plaintiff resumed taking the drug and subsequently made no other complaints. (Tr. 645-646, 446-452). Moreover, with respect to the doctor's observation as

to her tenderness, it is Plaintiff who ignores that this observation was made immediately after she had been off Lyrica for five months. (Tr. 446-448).

Plaintiff further contends that the ALJ failed to consider her ability to pay for the necessary medication. According to Plaintiff, the record is replete with references to her lack of insurance and dependence upon samples of medication because of her inability to afford it, and nothing contradicts her sworn testimony that she could not afford surgery to remove her warts. (Tr. 56). In support of this contention, she points to Social Security Ruling 82-59, which reads, in pertinent part:

> Under circumstances such as those described below, an individual's failure to follow prescribed treatment will be generally accepted as "justifiable" and, therefore, such "failure" would not preclude a finding of "disability" or that disability continues.
>
> . . . .
>
> *4. The individual is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable.* Although a free or subsidized source of treatment is often available, the claim may be allowed where such treatment is not reasonably available in the local community. All possible resources (e.g., clinics, charitable and public assistance agencies, etc.), must be explored. Contacts with such resources and the claimant's financial circumstances must be documented. Where treatment is not available, the case will be referred to VR.

1982 WL 31384, at *3-4 (January 1, 1982).

Plaintiff's contention is unavailing as to both the samples of medication and the proposed surgery. With respect to her purported reliance upon medication samples, Plaintiff testified that she is still taking Lyrica. (Tr. 40). Moreover, her testimony that she could not afford surgery is irrelevant, as Plaintiff failed to point to any substantial evidence showing that her plantar warts are something more than a slight abnormality which has such a minimal effect that it would not be expected to interfere with her ability to work. *See*

10

*Higgs v. Bowen*, 880 F.2d 860 (6th Cir. 1988); *Farris v. Sec'y of Health & Human Services*, 773 F.2d 85 (6th Cir. 1985). In fact, in assessing Plaintiff's condition on February 2010, Dr. Porter determined that she had a normal gait and could stand without difficulty, and Plaintiff herself stated that she "first noted [tender areas on her foot] years ago." (Tr. 485).

For all of these reasons, the ALJ did not err in concluding that Plaintiff's multiple myalgias and history of plantar warts are less than severe.

### 3. The ALJ did not err in assessing Plaintiff's exertional capacity

Plaintiff next argues that the ALJ erred in concluding that Plaintiff could perform work at the medium and higher level of exertion because her fibromyalgia and plantar warts, along with her diminutive stature,[1] precludes such a finding. *See* 20 C.F.R. § 416.967(d) ("If someone can do heavy work, . . . he or she can also do medium, light, and sedentary work."). This Court, though, rejected Plaintiff's contentions as to the ALJ's handling of her fibromyalgia and plantar warts in the preceding section, and her argument that it would be challenging for a person of her stature to perform a full range of work is nothing but a bald assertion. This argument, then, is without merit.

### 4. The ALJ did not err in assessing Plaintiff's mental capacity

Finally, takes issue with the non-exertional limitations set forth by the ALJ, to wit:

The claimant requires entry-level work with simple repetitive procedures, no requirement for detailed or complex problem solving, independent planning or the setting of goals. She should not be working at jobs involving frequent changes in work routines. She should work in an object-oriented environment with only occasional and causal interaction with co-workers, supervisors or the public.

---

[1] Plaintiff is 5'2" tall and weighs 130 pounds. (Tr. 146).

(Tr. 26). According to Plaintiff, the only accurate assessment of her RFC is that she had "a poor or seriously limited capacity for reacting predictably at social situations, responding appropriately to criticism or instruction from supervisors, working in coordination or proximity to coworkers or peers and dealing with the general public," which the VE testified would "eliminate employability." (Tr. 69). In support, Plaintiff notes that she has a long history of independently diagnosed depression which has been referred to as "severe," "recurrent" and "dysthymic," that she also has a documented history of suicidal ideation and a dysfunctional family, that she has previously been hospitalized after drinking mouthwash and charged with stealing from her mother to obtain pain medication, that she has memory problems as to her medical treatment, and that her treating medical providers consistently assigned her a Global Assessment of Function score of 50.

In establishing the non-exertional limitations outlined above, the ALJ noted that the record did not contain any opinions from treating or examining physicians indicating that Plaintiff was disabled or had any limitations greater than those he established, and that he had relied upon the opinions of state agency medical consultants, which would include the reports of two psychological consultants–Dr. Ann Demaree and Dr. Jay Athy. (Tr. 27). In her report dated December 7, 2009, Dr. Demaree concluded that Plaintiff did not have a severe mental impairment and opined that she was able to understand and remember simple and detailed instructions and procedures, to sustain reasonable attention and effort for at least simple task completion, to relate adequately with coworkers, supervisors, and occasionally the public for task completion, and to adapt adequately to situational changes and work demand in a setting with reasonable support. (Tr. 465-478). Her conclusion and opinion was subsequently affirmed by Dr. Athy on March 8, 2010. (Tr. 487-500).

Social Security Ruling 96-6P provides that "[s]tate agency . . . psychological consultants are highly qualified . . . psychologists who are experts in the evaluation of the medical issues in disability claims." 1996 WL 374180, at *2 (July 2, 1996). As a result, ALJs must consider must consider and evaluate any assessment of an individual's RFC by such a consultant, although these assessments are to be treated as medical opinions from nonexamining sources. *Id.* at *4. This means that, compared to other psychologists potentially included in the record, state agency consultants are generally given the least weight. *Brooks v. Soc. Sec. Admin.*, 430 F. App'x 468, 481 (6th Cir. 2011) (citation omitted).

As noted, however, in this case the ALJ pointed out that the record did not contain any opinions from treating or examining physicians indicating that Plaintiff had any limitations greater than those he established, and nowhere in her brief does Plaintiff contest this observation. Plaintiff's argument, then, is nothing more than an attempt to undermine the ALJ's determination rather than to show that it is not supported by substantial evidence. This is especially true in light of the ALJ's other observations, namely, that Plaintiff's medication and counseling helped address her symptoms of major depressive disorder, that the record reflects no actual treatment besides AA meetings, sporadic counseling sessions, and an evaluation, that Plaintiff does not have problems with her symptoms and can abstain from drugs and alcohol when compliant with her medications, that Plaintiff has offered contradictory statements as to whether she has audio and video hallucinations, and that she able and apparently permitted to care for her mother despite stealing from her. (Tr. 26-27).

For all of these reasons, the ALJ did not err in assessing Plaintiff's mental RFC and thus did not taint the VE's testimony. *See Casey v. Sec'y of Health & Human Services*, 987 F.2d 1230, 1235 (6th Cir. 1993) (recognizing that an ALJ is only required to incorporate those limitations he found credible in posing hypothetical questions).

### III. CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ's finding that Plaintiff was not disabled for purposes of the Social Security Act was supported by substantial evidence. Accordingly, for the reasons stated,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 14) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. # 15) is hereby **GRANTED**;

4. A Judgment affirming this matter will be entered contemporaneously herewith.

This 1st day of April 2013.



Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\Ashland\0-12-88 Rizzo MOO.wpd